IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Jackie E. McCabe, Jr., )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>Jo Anne B. Barnhart, )<br>Commissioner of Social Security, )<br>)<br>Defendant. )<br>) | Civil Action No. 6:04-22630-HFF-WMC<br><br>**REPORT OF MAGISTRATE JUDGE** |

This case is before the court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. Section 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security Administration that the plaintiff was not entitled to disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). The only issues before the court are whether the findings of fact are supported by substantial evidence and whether proper legal standards were applied.

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

**ADMINISTRATIVE PROCEEDINGS**

On May 31, 2001, the plaintiff filed applications for DIB and SSI alleging disability beginning May 6, 2001. The applications were denied initially and on reconsideration. On October 17, 2002, the plaintiff requested a hearing, which was held on September 9, 2003. Following the hearing, at which the plaintiff, his attorney and a vocational expert appeared, the administrative law judge considered the case *de novo*, and on April 19, 2004, determined that the plaintiff was not entitled to benefits. This determination became the final decision of the Commissioner when it was adopted by the Appeals Council on September 2, 2004.

In making the determination that the plaintiff was not entitled to benefits, the ALJ made the following findings:

> (1)     The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through December 31, 2002.
>
> (2)     The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> (3)     The claimant has coronary artery disease that is status-post three-vessel stent placement and residuals from fracture of the left lower foot, impairments that are "severe" as defined in the regulations, but not severe enough to "meet" or "equal" any portion of the Listing of Impairments found in Appendix 1 to Subpart P of Regulations No. 4.
>
> (4)     The claimant's allegations regarding his limitations are unsubstantiated by the record and, therefore, less than fully credible.
>
> (5)     The claimant has the residual functional capacity for work with restrictions that require no lifting or carrying over 10 pounds; no standing and or walking over two hours in an eight-hour workday; limited stooping, twisting, crouching, kneeling, and climbing of stairs or ramps; no foot pedals or other controls with the left lower extremity; and work performed in an environment free from extremes of humidity and temperature.

(6)    The claimant is precluded from his past relevant work due to his restriction for lifting and carrying no more than (10 pounds (20 CFR §§ 404.1565 and 416.965).

(7)    The claimant is a "younger individual" (20 CFR §§ 404.1563 and 416.963).

(8)    The claimant has a "limited education" (20 CFR §§ 404.1564 and 416.964).

(9)    The claimant has transferable skills from previous work activity that include general clerical and sales related skills (20 CFR §§ 404.1568 and 416.968).

(10)   Although the claimant's exertional limitations do not allow him to perform the full range of sedentary work, using Medical-Vocational Rule 201.03 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as a checking/retail cashier, service cashier, and material order clerk.

(11)   The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(1) and 416.920(f)).

The only issues before the court are whether the findings of fact are supported by substantial evidence and whether proper legal standards were applied.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1 )(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can expected to result in death or which has lasted or can be expected to last for at least 12 continuous months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 CFR Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. 20 CFR §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 CFR §404.1503(a). *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423 (d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id*.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389

(1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. See *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **EVIDENCE PRESENTED**

The plaintiff was born on December 28, 1959, and was 43 years old on the date of the hearing (Tr. 30). He has a tenth-grade education (Tr. 31) and prior work experience as a tire technician, selling and repairing large truck tires (Tr. 32).

The plaintiff stopped working because of three heart attacks he had in May 2001 (Tr. 33). At that time he had heart surgery which involved insertion of three stents (Tr. 33; 184-187). The plaintiff testified that since his heart attack he has had to take medication and he still experiences shortness of breath (Tr. 34; 36-37). The plaintiff also has had problems with his left foot, necessitating multiple surgeries in 2001 and 2002 (Tr.

42-45; 65). He has received treatment for pain management (Tr. 448-449). In addition, the plaintiff broke his hip several years ago and it has continued to bother him ever since (Tr. 45-51).

The ALJ found that the plaintiff has coronary artery disease and residuals from a fracture of the left foot, both of which are severe impairments, but do not meet any of the listing requirements. He also found that the plaintiff's mood disorder, hip pain, history of testicular cancer and high blood pressure were non-severe impairments (Tr. 16-17). The ALJ then found that the plaintiff retained the residual functional capacity for a range of sedentary work and could perform other work existing in the national economy, such as clerk/retail cashier, service cashier, and material order clerk (Tr. 22).

The plaintiff argues that the decision of the ALJ is not supported by substantial evidence. Specifically, the plaintiff asserts that the ALJ erred by (1) not finding that the plaintiff's mood disorder was a "severe" impairment; (2) not properly considering Dr. Hero's October 2002 assessment; (3) finding that the plaintiff could perform other work existing in significant numbers in the national economy; and (4) not accepting the vocational expert's answer to hypothetical questions propounded by the plaintiff.

### *Severity of Impairment*

The plaintiff argues that the ALJ erred by not finding his mood disorder to be a severe impairment. In order to be considered "severe," an impairment must significantly limit the claimant's ability to do basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987) (an impairment is not severe if it does not significantly limit the claimant's physical or mental ability to do the work). "An impairment is 'not severe' or insignificant only if it is a slight abnormality which has a minimal effect on the individual's ability to work, irrespective of age, education or work experience." *Reichenbach v. Heckler*, 808 F.2d 309,

311 (4th Cir. 1985). The burden is on the claimant to establish that he has a severe impairment.

The ALJ here noted that the plaintiff was diagnosed with a mood disorder, but found that it was not a severe impairment. This finding is supported by substantial evidence. The plaintiff was treated by Dr. James Shaw for depression and anxiety. Dr. Shaw's treatment notes between July 2001 and April 2002 indicate that the plaintiff's anxiety and depression were treated with medication (Tr. 238; 240; 243; 247; 248). Dr. Shaw did not place any limitations on the plaintiff due to his anxiety and depression. From May to October of 2002, the plaintiff was treated at the Kershaw County Mental Health Clinic (KCMHC), where he was prescribed Zoloft (Tr. 350-355). The treatment notes indicate that the Zoloft eased his depression and anxiety (Tr. 350).

In October, 2002, Dr. Numa C. Hero, III, a physician at KCMHC, completed a form assessing the plaintiff's ability to do work-related activities (mental). In this assessment, Dr. Hero indicated that the plaintiff's abilities to follow work rules, interact with supervisors and maintain attention and concentration were "poor." He indicated that the plaintiff had a fair ability to relate to co-workers and deal with work stresses and a good ability to deal with the public, use judgment and function independently. In addition, Dr. Hero assessed the plaintiff's ability to understand and carry out complex instructions to be good, and his ability to maintain personal appearance, behave in an emotionally stable manner, relate predictably in social situations and demonstrate reliability to also be good In support of his assessment, Dr. Hero stated that the plaintiff had a history of problems with focusing, concentrating and working with others, and that he was extremely frustrated with his ongoing physical problems (Tr. 410-411). This statement indicates that Dr. Hero's assessment was based primarily on the plaintiff's subjective complaints. *See Craig v. Chater*, 76 F.3d 585, 588-590 (4th Cir. 1996) ("All [the treating physician] gave here was a conclusory opinion based upon [the claimant's] subjective reports of pain.").

7

Dr. Edward Waller, a state agency psychologist, also examined the plaintiff's medical records and opined that the plaintiff did not have a "severe" mental impairment (Tr. 396-408). The ALJ properly considered the opinion of Dr. Waller. *See* 20 C.F.R. §§404.1527(f), 416.927(f).

The evidence in the record indicates that the plaintiff's depression and anxiety were controlled by medication. There is no indication that the plaintiff's mental impairment would significantly limit his ability to do work. Accordingly, the decision of the ALJ finding that the plaintiff's impairment was not severe is supported by substantial evidence.

### *Dr. Hero's Assessment*

The plaintiff argues that the ALJ improperly rejected part of Dr. Hero's assessment and accepted other parts of the assessment. This argument is without merit. As outlined above, Dr. Hero indicated that the plaintiff's abilities in three categories were poor to none while other abilities were fair or good. The ALJ rejected Dr. Hero's opinion that the plaintiff had no useful ability in following work rules, interacting with supervisors and maintaining concentration because the assessment was not supported by clinical findings in his treatment notes. The ALJ did not have to accept or reject Dr. Hero's assessment in its entirety, and he properly found that Dr. Hero's more restrictive limitations in certain categories were not supported by objective clinical evidence.

### *Residual Functional Capacity*

The plaintiff also contends that the ALJ improperly found that the plaintiff could perform other jobs existing in significant numbers in the national economy. The ALJ asked the vocational expert to assume a hypothetical individual of the plaintiff's age, education, and work experience, limited to sedentary work, with:

> limited postural, limited stooping, twisting, crouching, kneeling and climbing of stairs and ramps ... no crawling, balancing or climbing of ladders or scaffolds, no foot pedals or other controls with the left, lower extremity and, again, an environment free from extremes of humidity and temperature."

(Tr. 67). The vocational expert responded that an individual with such limitations would be able to perform the following jobs: check/retail cashier, service cashier, and material order clerk. The VE also testified that such an individual would be able to perform certain unskilled sedentary jobs such as a small products assembler and various packers, graders, and sorters.

The plaintiff argues that the ALJ erred in finding that the plaintiff could perform the skilled positions of service cashier and material order clerk, because these positions are both classified as skilled work and are thus precluded by the plaintiff's prior work experience, which is classified as semi-skilled. The defendant concedes this argument but contends that it was harmless error because the check/retail cashier job, also cited by the vocational expert, is semi-skilled and exists in significant numbers.

The plaintiff contends that the check/retail cashier job requires reasoning and mathematical levels inconsistent with specific vocational preparation (SVP) time required for semi-skilled work. However, under SSR 00-4p, where reasoning and mathematical development levels of 3, as outlined in the Dictionary of Occupational Titles (DOT), are inconsistent with an SVP 3 or unskilled work, "SSA adjudicators may not rely on evidence provided by a [vocational expert] ... or other reliable sources of occupational information if that evidence is based on underlying assumptions or definitions that are inconsistent with our regulatory policies or definitions." 2000 WL 1898704, at *3. Therefore, the ALJ could not rely on evidence in the DOT which would be inconsistent with social security policies or definitions. Accordingly, the ALJ properly settled the inconsistency by finding that the plaintiff could perform semiskilled work as a check/retail cashier.

*Hypothetical Question*

The plaintiff also contends that the ALJ erred by not relying on a hypothetical propounded by the plaintiff which took into account Dr. Hero's opinion that the plaintiff had no useful ability in following work rules, interacting with supervisors and maintaining concentration. This argument is without merit.

The Fourth Circuit has held that "[i]n order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of the claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir., 1989). The questions, however, need only reflect those impairments that are supported by the record. *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). The purpose of a vocational expert's testimony is to assist in determining whether jobs exist in the national economy which a particular claimant could perform. *Id*. The ALJ, however, has great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question. *See Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1986).

The plaintiff argues that the ALJ should have included the more restrictive assessment of Dr. Hero in his hypothetical. However, the ALJ was not required to incorporate in his hypothetical limitations that were not supported by credible medical evidence. *Lee v. Sullivan*, 945 F.2d 687 (4th Cir. 1991). The hypothetical here clearly includes the limitations found by the ALJ and supported by substantial evidence in the record. The ALJ was not required to include the restrictions urged by the plaintiff because he found that they were not supported by the record. *Id.* at 693-694 (noting that a requirement introduced by claimant's counsel in a question to the VE was not supported by the evidence, and the vocational expert's testimony in response to the question was without support in the record). In response to this hypothetical, the vocational expert identified

numerous jobs which the plaintiff could perform with his limitations. Based on the ALJ's previous findings, the hypothetical propounded by the ALJ to the VE was proper and is not grounds for reversal of the ALJ's decision.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, this court concludes that the findings of the ALJ are supported by substantial evidence and recommends that the decision of the Commissioner be affirmed.

          s/William M. Catoe
          United States Magistrate Judge

October 11, 2005

Greenville, South Carolina